## Kardelis v. Cangelosi

*Franklin S. VanAntwerpen,* for plaintiffs.

*Frank Poswistilo,* for defendants.

FRANCIOSA, J., December 20, 1971.—Plaintiffs instituted this action in equity to obtain a decree compelling defendants to complete the grading and installation of road bases on certain portions of Brookwood Lane and East Drive in Palmer Township. A full hearing was held before the court and suggested findings of fact and conclusions of law have been submitted.

On the basis of the pleadings, stipulations entered into before the court and the credible evidence, we make the following

### FINDINGS OF FACT

1. In 1953, a certain tract of land known as

"Brookwood Acres," Palmer Township, Northampton County, Pa., was subdivided into building lots.

2. The recorded subdivision plan shows a street designated as "Brookwood Lane," with a right-of-way of 60 feet and a cartway of 36 feet; and a street designated as "East Drive," having a right-of-way of 50 feet and a cartway of 30 feet.

3. On March 27, 1968, the tract of land known as "Brookwood Acres" was conveyed to defendants, John P. Cangelosi and Gloria Cangelosi, his wife, by a deed recorded in Deed Book 316, page 395, excepting thereout, lots sold by prior owners of the tract.

4. Among the lots which had been sold before defendants became the owners of "Brookwood Acres" were the following:

(a) Lots Nos. 23 and 24 owned by plaintiffs, Joseph C. Kardelis and Julia A. Kardelis, his wife.

(b) Lot No. 14 owned by plaintiffs, Richard H. Nellis and Stella M. Nellis, his wife.

(c) Lot No. 4 owned by plaintiffs, Henning F. Yaich and Cora H. Yaich, his wife.

(d) Lot No. 5 owned by plaintiffs, Ladislavs T. Ficzko and Mary G. Ficzko, his wife.

5. The area known as "Brookwood Acres" does not now have, nor did it ever have, paved streets.

6. On or about September 16, 1968, defendants installed 228 feet of curbing along the frontage of Lot No. 13, a lot which they have developed.

7. On or about May 16, 1969, defendant, John P. Cangelosi, had a conversation with the two plaintiffs, Joseph C. Kardelis and Richard H. Nellis.

8. During the conversation, the husband defendant stated that if plaintiffs, who were the owners of the five other developed lots in "Brookwood Acres," would also install curbing, he (Cangelosi) would grade and

provide a base so that the curbed portions of Brookwood Lane and East Drive could be paved.

9. The township ordinance applicable to "Brookwood Acres" permits the township to pave Brookwood Lane and East Drive when curbing is installed, the streets graded and a stone base laid in accordance with township specifications.

10. Plaintiffs have installed curbing along the frontage of their lots; all of it was in place by the Fall of 1969, approximately four months after the conversation of May 16, 1969.

11. Defendant, John P. Cangelosi, has not completed the grading and installation of a base on those portions of Brookwood Lane and East Drive which have been curbed.

12. On or about August 18, 1970, husband defendant had a conversation with Charles S. Smith, Esquire, attorney for plaintiffs. Mr. Cangelosi admitted he had agreed to put the streets in; he stated he had been unable to do so because he was "short of money at the time."

13. As yet, the curbed portions of Brookwood Lane and East Drive remain unpaved.

## DISCUSSION

Ordinarily, equitable jurisdiction may not be invoked to enforce a contract for construction work. However, there are situations when the mere fact of the existence of a legal remedy is not sufficient to oust equity of jurisdiction. A line of decisions has held that an action in equity may be sustained solely on the ground that it is the most convenient and effective remedy or on the ground that the remedy at law is "vexatiously inconvenient."[1]

---

[1] See P.L.E., Vol. 13, Equity §18, and authorities therein cited.

The case at bar has an aspect to it which causes us to conclude that equity affords the most convenient remedy for a just disposition of the questions involved in it. The work which is the subject matter of the dispute before us must be performed on land owned by defendants.[2] Thus, the awarding of damages would not secure the right of plaintiffs to enter upon defendants' land to perform the necessary work. Hence, it follows that the legal remedy is inadequate and incomplete.

Our utilization of the equitable approach brings a number of principles and maxims into play. First, in an action of equity the sound discretion of the trial court is the controlling guide of judicial action: Pennsylvania v. Williams, 294 U. S. 176, 55 S. Ct. 380, 79 L. Ed. 841. Next, equity looks to the substance of a transaction, not to its mere form or color, and sees things as ordinary men do: Roomberg v. United States, 40 F. Supp. 621. Consequently, the difficulty of proving a fact does not deprive one of a right growing out of such fact: McKeown's Estate, 263 Pa. 78, 106 A. 189. Also, it has been pointed out that equity courts are not bound by strict common law rules and they possess broad powers to do substantial justice and will depart from the rigid rule of law whenever it is necessary to accomplish the ends of justice: Weissman v. Weissman, 384 Pa. 480, 121 A. 2d 100. Finally, equity considers done that which ought to be done: Toner v. Sobelman, 86 F. Supp. 369; Stark v. Lardin, 133 Pa. Superior Ct. 96, 1 A. 2d 784; City of Philadelphia v. Myers, 102 Pa. Superior Ct. 424, 157 A. 13.

---

[2] The streets designated on the plan of "Brookwood Acres" have not been accepted by Palmer Township; therefore, ownership in the land area remains in defendants subject to the public right to travel over the surface within the street right-of-ways.

Under the above principles and maxims the plaintiffs must prevail. A careful review of the testimony convinces us that defendant, John P. Cangelosi, promised plaintiffs that he would undertake to have portions of Brookwood Lane and East Drive paved if they installed the necessary curbing on their respective properties.

Defendant asks this court to ignore the equities of the situation before us on the grounds that (1) the oral conversation of May 16, 1969, was too indefinite to create an enforceable contract; and (2) that there is a lack of consideration to support the alleged contract.

Although we believe the testimony in this case presents all of the essential elements of a unilateral contract, we have not decided to enforce husband defendant's promise on that basis.

In our opinion, the ends of justice can be accomplished by applying the doctrine of promissory estoppel. That doctrine is set forth in section 90 of the Restatement of the Law of Contracts. It has been recognized by the Pennsylvania courts in the following terms:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise": Fried v. Fisher, 328 Pa. 497, 196 A. 39; Stelmack v. Glen Alden Coal Company, 339 Pa. 410, 14 A. 2d 127; Berliner v. Bee Em Manufacturing Company, 383 Pa. 458, 119 A. 2d 65.

From the above statement of the doctrine, it becomes clear that three factors are involved in a promissory estoppel: (1) the promise must be one likely to induce action; (2) such action must be of a definite and substantial character; and (3) the circumstances must

be such that injustice can be avoided only by the enforcement of the promise.

The facts before us meet all three requirements. Husband defendant's promise was likely to induce action because all four plaintiffs desired to have paved streets abutting their properties. Plaintiffs' actions of installing several hundred feet of curb were certainly of a definite and substantial character. The circumstances that the curbing will be useless and plaintiffs' expenditures wasted are such that injustice can be avoided only by the enforcement of John Cangelosi's promise.

The decree for equitable relief is entered solely against husband defendant. We agree with wife defendant's contention that the record before us is completely devoid of evidence showing her participation, either directly or indirectly, in the conversation of May 16, 1969, or in any of the events which subsequently occurred. We reject plaintiffs' argument that equitable relief against wife defendant may be predicated on no other fact than title to "Brookwood Acres" is vested in her and her husband as tenants by the entireties.

## CONCLUSIONS OF LAW

1. The instant case is a proper one for equitable relief, since the remedy at law is inconvenient and ineffective.

2. The doctrine of promissory estoppel is applicable to the promise made by husband defendant during his oral conversation of May 16, 1969, with plaintiffs, Joseph C. Kardelis and Richard H. Nellis.

Accordingly, we enter the following

## DECREE NISI

And now, December 20, 1971, it is ordered, adjudged and decreed that husband defendant, John P.

Cangelosi, shall pay for and provide all of the civil engineering services, labor and materials necessary for the grading and installation of bases on the curbed portions of Brookwood Lane and East Drive, Palmer Township, according to the specifications of the Township of Palmer.

It is further ordered, adjudged and decreed that John P. Cangelosi fully comply with this decree nisi within one year of its entry as a final decree.

Plaintiffs' complaint is denied and dismissed in so far as it relates to wife defendant, Gloria Cangelosi.

The prothonotary is directed to enter this decree nisi and to give prompt notice of the same to the parties. If no exceptions are filed within 20 days, this decree shall be entered by her as a final decree.